UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PETER G. GRAIN, M.D. and ANNETTE
BARNES, M.D.,
      Plaintiffs,

v.

TRINITY HEALTH, MERCY HEALTH      Case No. 03-72486
SERVICES, INC. d/b/a MERCY
HOSPITAL - PORT HURON, MARY      Honorable Patrick J. Duggan
TRIMMER, JERE BALDWIN, M.D.,
BERNARD VELARDO, M.D., and
MAHMOUD CHAFTE, M.D.,
      Defendants.
_____/

**OPINION AND ORDER DENYING PLAINTIFFS' OBJECTIONS TO
MAGISTRATE JUDGE'S APRIL 15, 2009 ORDER AND GRANTING
DEFENDANTS' REQUEST FOR SANCTIONS PURSUANT TO 28 U.S.C. § 1927**

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on June 26, 2009.

PRESENT: THE HONORABLE PATRICK J. DUGGAN
U.S. DISTRICT COURT JUDGE

Presently before the Court are Plaintiffs' objections to Magistrate Judge Steven D. Pepe's April 15, 2009 order denying Plaintiffs' motion to disqualify Defendants' counsel and granting in part and denying in part Defendants' motion to strike the December 8, 2008 affidavit of Plaintiff Peter Grain, M.D. that Plaintiffs submitted in support of their motion. In response to Plaintiffs' objections, Defendants ask the Court to order Plaintiffs' counsel to pay the costs and fees Defendants have incurred defending against the motion to disqualify, pursuant to 28 U.S.C. § 1927. For the reasons that follow, the

Court finds no merit to Plaintiffs' objections and concludes that an award of costs and fees is warranted.

## Standard of Review

Pursuant to 28 U.S.C. § 636(b)(1)(A), district courts must apply a "clearly erroneous or contrary to law" standard of review for magistrate judges' decisions on nondispositive preliminary matters. *United States v. Curtis*, 237 F.3d 598, 602-03 (6th Cir. 2001). A decision "is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 68 S. Ct. 525, 542 (1948). Stated differently, if there are two permissible views of the evidence, a magistrate judge's choice between them cannot be "clearly erroneous." *Anderson v. City of Bessmer*, 470 U.S. 564, 573, 105 S. Ct. 1504, 1512 (1985).

## Plaintiffs' Objections and Analysis

Plaintiffs assert the following objections to Magistrate Judge Pepe's April 15, 2009 decision:

> (1) the magistrate judge was required to conduct a hearing with respect to Defendants' motion to strike the affidavit of Dr. Grain pursuant to this Court's order of reference, dated December 12, 2008;
>
> (2) the failure to conduct a hearing violated Plaintiffs' due process rights;
>
> (3) Plaintiffs' motion to disqualify Defendants' counsel and the motion to strike Dr. Grain's affidavit are intertwined and

>thus the violation of Plaintiffs' due process rights requires that both motions be reversed and remanded for an evidentiary hearing;
>
>(4) the magistrate judge erred in granting the arbitration panel's rulings collateral estoppel effect;
>
>(5) Defendants waived any attorney-client privilege with respect to the documents placed inside, but subsequently removed from, Dr. Grain's peer review file[1] and the magistrate judge erred in concluding that Defendant Mercy Hospital's in-house counsel, Page Underwood, was legally permitted to review Dr. Grain's file; and
>
>(6) the crime-fraud exception to the attorney-client privilege applies so as to warrant this Court's *in camera* inspection of the documents in Dr. Grain's peer review file that Defendants claim are subject to attorney-client privilege in order to assess whether those documents evidence unethical and illegal involvement by Defendants' counsel in accessing and copying Dr. Grain's file.

**Plaintiffs' Right to a Hearing**

On October 8, 2008, Plaintiffs filed their motion to disqualify defense counsel. This Court issued an order on October 24, 2008, referring the motion to Magistrate Judge Pepe pursuant to 28 U.S.C. § 636(b)(1)(A). On December 2, 2008, Magistrate Judge Pepe conducted a hearing with respect to Plaintiffs' motion. At the conclusion of the hearing, the magistrate judge informed the parties that he would keep the record open for one week to allow the parties to submit supplemental materials, reserving to each party the right to file a motion to strike any supplemental submission. (Pls.' Obj., Ex. 3 at 105-

---

[1]Pursuant to an order of the arbitration panel, those documents have been returned to Dr. Grain's peer review file inside a sealed envelope.

3

06.)

On December 9, 2008, Plaintiffs filed an affidavit of Dr. Grain, dated December 8, 2008, to supplement their motion to disqualify defense counsel.  On December 12, Defendants moved to strike Dr. Grain's affidavit.  Defendants argued that the entire affidavit should be stricken because Dr. Grain's averments were inconsistent with his statements in previous affidavits and were based on speculation and conjecture.  Alternatively, Defendants asked the court to strike paragraph 18 of the affidavit based on its inclusion of inadmissible hearsay.  In an order issued on the same date, this Court referred Defendants' motion to Magistrate Judge Pepe pursuant to 28 U.S.C. § 636(b)(1)(A).

Plaintiffs thereafter responded to Defendants' motion, contesting Defendants' objections to the affidavit.  With respect to paragraph 18, however, Plaintiffs stated: "To the extent that Dr. Grain's statements at ¶ 18 of his affidavit . . . rests upon inadmissible hearsay under Fed. R. Evid. 802, that paragraph and that paragraph only should be stricken." (Doc. 159 ¶ 28.)

On April 15, 2009, Magistrate Judge Pepe issued his order granting in part and denying in part Defendants' motion to strike Dr. Grain's affidavit.  Magistrate Judge Pepe denied Defendants' request to strike the affidavit in its entirety, but granted and struck paragraph 18 of the affidavit because it "consists entirely of Plaintiff's hearsay account of a comment supposedly made by former Arbitrator O'Neal Wright regarding

his alleged observations of materials." (Doc. 165 at 26.)

Plaintiffs now argue that Magistrate Judge Pepe was required to conduct a hearing with respect to Defendants' motion to strike, as this Court referred the matter to him for "[h]earing and [d]etermination." (Doc. 157.) Plaintiffs contend that the magistrate judge's failure to comply with this Court's order violated Plaintiff's due process rights under the Fifth Amendment. Plaintiffs therefore argue that this Court must reverse both of Magistrate Judge Pepe's orders (the motion denying Plaintiffs' motion to disqualify defense counsel and Defendants' motion to strike Dr. Grain's affidavit) and remand the case for an evidentiary hearing.

28 U.S.C. § 636(b)(1)(A) provides that a district court judge "may designate a magistrate judge to hear and determine any pretrial matter pending before the court . . ." "Hear" does not necessarily mean to hold a "hearing." Further, when referring motions to a magistrate judge, this Court never intends to order or require the magistrate judge to conduct a hearing and leaves it to the magistrate judge's discretion whether a hearing is necessary.

In any event, Plaintiffs cite no authority to support their claim that they had a right to a hearing with respect to Defendants' motion to strike Dr. Grain's affidavit. There is authority, however, for the opposite proposition. *See, Laitram Machinery, Inc. v. Carnitech A/S*, 878 F. Supp. 65, 66-67 (E.D. La. 1995) (rejecting party's claim that it was denied due process when the magistrate judge decided its motion without a hearing,

noting that "[the party] cites no case law, and this Court knows of none, which required that the Magistrate Judge conduct oral argument on [the party's] motion"); *see also Harrison v. Int'l Ass'n of Machinist and Aerospace Workers*, No. 97-1946, 1998 WL 552933, at *1 (6th Cir. Aug. 11, 1998) (unpublished opinion) ("Neither 28 U.S.C. § 636 . . . nor Fed. R. Civ. P. 72 requires a Magistrate Judge to hold an evidentiary hearing before making a report and recommendation to the district court concerning motions..."); *Simanonok v. United States*, No. 94-2105, 1995 WL 550238, at *1 (1st Cir. Sep. 13, 1995) (unpublished opinion) (rejecting the plaintiff's assertion that the magistrate judge was required to hold a hearing on the defendants' motion to dismiss); *Garcia v. City of Albuquerque*, 232 F.3d 760, 766 (10th Cir. 2000); 14 Moore's Fed. Prac. 3d § 72.06[5] ("A magistrate judge is not required to hear oral argument on motions. Motions may be decided by the magistrate judge based on briefs alone.")

Plaintiffs did not have a right– much less a due process right under the Constitution– to a hearing with respect to Defendants' motion to strike Dr. Grain's affidavit. The Court therefore finds no merit to Plaintiffs' first three objections to Magistrate Judge Pepe's April 15, 2009 decision, which are premised on their claim that they possessed such a right.[2]

---

[2] In their third objection, Plaintiffs also contend that, because Magistrate Judge Pepe only struck paragraph 18 of Dr. Grain's affidavit, he was "duty-bound to accept as true and proven" Dr. Grain's remaining "uncontroverted and unopposed averments . . .." (Defs.' Obj. at 6-7 (emphasis removed).) Contrary to Plaintiffs' assertion, however, Dr. Grain's statements in his affidavit were not undisputed. Additionally, Magistrate Judge Pepe was entitled to consider all of the evidence, including testimony and arguments

6

**Collateral Estoppel Effect of the Arbitration Panel's Ruling**

Relying on *Nance v. Goodyear Tire & Rubber Co.*, 527 F.3d 539 (6th Cir. 2008), Plaintiffs argue that the magistrate judge erred in giving preclusive effect to the arbitration panel's rulings with respect to defense counsel's alleged misconduct. Plaintiff's reliance on *Nance* is misplaced.

The issue presented in *Nance* was whether an arbitrator's finding that the plaintiff had "resigned without notice"– which was rendered in grievance proceedings that the plaintiff's union filed to dispute the plaintiff's termination– barred the plaintiff's claims of discrimination and retaliation in violation of the Americans with Disabilities Act that she subsequently filed in federal court. The Sixth Circuit began its discussion by noting the general rule that such findings are binding:

> Generally, "once an issue has been fully litigated and necessarily determined by an adjudicatory body, a party and its privies are precluded from raising that issue in a subsequent proceeding."

527 F.3d at 547 (quoting *Central Transp., Inc. v. Four Phase Sys., Inc.*, 936 F.2d 256, 260 (6th Cir. 1991)). The court excepted the case before it from the general rule based on the fact that the prior proceeding was pursued to vindicate the plaintiff's rights under a collective bargaining agreement. *Id.* (citing *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 94 S. Ct. 1011 (1974). *Nance* and the cases on which it relied addressed the

---

made during the arbitration proceedings when the same issues were addressed, to assess the weight (if any) to give Dr. Grain's statements.

preclusive effect of a prior proceeding pursued by a plaintiff-employee pursuant to a collective bargaining agreement. None of these cases stand for the proposition that findings in a prior proceeding addressing *any* contract claim lack a preclusive effect in subsequent actions brought pursuant to Title VII or another federal statute.

Therefore, provided the prerequisites for issue preclusion are met, the general rule applies to the arbitration panel's findings with respect to the alleged misconduct of defense counsel in relation to Dr. Grain's peer review file. The four prerequisites are:

> 1) the issue precluded must be the same one involved in the prior proceeding; 2) the issue must actually have been litigated in the prior proceeding; 3) determination of the issue must have been a critical and necessary part of the decision in the prior proceeding; and 4) the prior forum must have provided the party against whom estoppel is asserted a full and fair opportunity to litigate the issue.

*Central Transp.*, 936 F.2d at 259 (citation omitted). Plaintiffs contend that the issues presented in their motion for disqualification were "not actually litigated" in the arbitration proceedings because the arbitration panel simply declined to recommend further investigation, sanctions and/or disqualification to the district court in its December 1, 2006 decision on Plaintiffs' motion for sanctions.

While the matter of defense counsel's alleged misconduct was extensively litigated before the arbitration panel, the panel in fact did not provide any express findings or conclusions in its December 1, 2006 decision with respect to whether or not counsel improperly accessed and copied Dr. Grain's peer review file. Therefore, the

arbitrator's decision with respect to defense counsel's alleged misconduct arguably may not be entitled to the preclusive effect that Magistrate Pepe gave it. In that case, the panel's decision with respect to Plaintiffs' motion for sanctions should not have precluded *de novo* review in deciding the motion for disqualification that Plaintiffs subsequently filed here. Magistrate Judge Pepe, however, also performed an independent review of the record and found no illegal or unethical conduct by Defendants' attorneys.

Magistrate Judge Pepe did not conduct an independent *in camera* review of the sealed documents that Defendants claimed were protected by attorney-client privilege to determine whether they evidenced wrongful conduct by defense counsel with respect to Dr. Grain's peer review file. However, the Court believes that the arbitration panel did make a final determination on this issue. The panel viewed the documents *in camera* to assess whether they were subject to attorney-client privilege and then ordered them to be sealed. (Doc. 142, Ex. J. at ¶ 5.) For this reason, the Court will not address Plaintiffs' argument in the first paragraph of their fifth objection that these documents are not privileged.

In short, even if Magistrate Judge Pepe should not have given preclusive effect to the arbitration panel's rulings with regard to whether Defendants' counsel engaged in misconduct, he nevertheless also engaged in a de novo review of the evidence to reach a decision on this issue. The Court finds no error in that decision. Further, the Court finds that the arbitration panel's ruling with respect to the sealed documents in Dr. Grain's peer review file precludes Plaintiffs from re-arguing here that those documents are not

9

covered by the attorney-client privilege.

## Whether Defendants Waived the Attorney-Client Privilege

Plaintiffs argue that, by placing the alleged privileged communications in Dr. Grain's peer review file, Defendants waived the privilege. Magistrate Judge Pepe's ruling on this issue is not contrary to law.

"Generally, the 'attorney-client privilege is waived by voluntary disclosure of private communications by an individual or corporation to third parties.'" *Grace Cmty. Church v. Lenox Twp.*, No. 06-13526, 2007 WL 2534179, at *3 (E.D. Mich. Aug. 31, 2007) (quoting *In re Grand Jury Proceedings*, 78 F.3d 251, 254 (6th Cir. 1996)). Where the disclosure is inadvertent, however, courts do not necessarily conclude that the privilege is waived. As Judge Borman explained in *Grace Community Church*, to decide whether an inadvertent disclosure constitutes a waiver, federal courts have adopted three different approaches:

> [T]he objective approach, the subjective approach and the intermediate approach. Under the objective approach, any disclosure, regardless of intent, constitutes a waiver. *See Underwater Storage, Inc. v. United States Rubber Co.*, 314 F. Supp. 546, 548-49 (D.D.C. 1970). The subjective approach is inapposite to the objective approach; an inadvertent disclosure does not ever constitute a waiver due to the lack of intent to waive the privilege. *See Connecticut Mut. Life Ins. Co. v. Shields*, 18 F.R.D. 448, 451 (S.D.N.Y. 1995). Finally, the intermediate approach is factor-based and requires the Court to balance said factors. The factors to be considered are: 1) the reasonableness of precaution taken in view of the extent of document production; 2) the number of inadvertent disclosures; 3) the magnitude of the disclosure; 4) any

n
n
n

>   measures taken to mitigate the damage of the disclosures; and
>   5) the overriding interests of justice. *Fox* [*v. Massey-Ferguson, Inc*., 172 F.R.D. 653, 671 (E.D. Mich. 1995)];
>   *F.D.I.C. v. Ernst & Whinney*, 137 F.R.D. 14, 17 (E.D. Tenn. 1991).

*Grace Cmty. Church*, 2007 WL 2534179, at *4. As of September 19, 2008, Federal Rule of Evidence 502 provides that inadvertent disclosures do not operate as a waiver of the attorney-client privilege or work-product protection if: "(1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error." Fed. R. Evid. 502(b).

The Sixth Circuit has not addressed this issue. The district courts in this Circuit, however, overwhelmingly have followed the intermediate approach. *See, e.g., Fox*, 172 F.R.D. at 671; *Ernst & Whinney*, 137 F.R.D. at 17; *Bobbitt v. Acad. of Court Reporting, Inc.*, No. 07-10742, 2008 WL 4056323, at *8-9 (E.D. Mich. 2008) (Lawson); *Evenflo Co. v. Hantec Agents Ltd.*, 2006 WL 2945440, at *5 (S.D. Ohio 2006) (citing cases). In light of this authority, Federal Rule of Evidence 502, and the facts surrounding the inadvertent disclosure in this case (*see* Doc. 165 at 13-18), the Court cannot conclude that Magistrate Judge Pepe erred in holding that Defendants did not waive the attorney-client privilege.

### Whether Mercy Hospital's In-House Counsel was Legally Permitted to Review Dr. Grain's Peer Review File

Plaintiffs object to Magistrate Judge Pepe's conclusion that Mercy Hospital's in-house counsel, Page Underwood, was legally permitted to review Dr. Grain's peer review

11

file. As an initial matter, this Court is not certain of the relevancy of this alleged error with respect to Plaintiffs' motion. In their motion, Plaintiffs only seek to disqualify Mr. Seryak and his law firm, Miller Canfield Paddock and Stone ("Miller Canfield"). In any event, this Court finds no error in the magistrate judge's decision.

Magistrate Judge Pepe found that Ms. Underwood's review of the file "was consistent with her role as legal advisor to Mercy Hospital on peer review matters and was permissible under law." (Doc. 165 at 29.) The court reasoned:

> Legal advice is commonly required on [hospital liability and quality-of-care] issues, and Trinity's attorneys regularly review peer review files in connection with this advice. Once Dr. Grain sued Trinity Health, Mercy Hospital and CEO Mary Trimmer, making allegations regarding not only quality of care issues but the peer review process itself, Defendants and their in-house counsel were professionally permitted, possibly even obligated to review the peer review file to investigate the dispute and to defend the hospital and officials. There was no legal basis to prevent these Defendants and their in-house counsel from accessing peer review files.

(*Id*. at 31 n. 13.) In their objections, Plaintiffs argue that three different Michigan statutes, Mich. Comp. Laws Sections 331.533, 333.20175(8), and 333.21515, render confidential peer-review materials relating to patient data and subject to release only under very narrow exceptions. None of these statutes, however, make it unlawful for in-house counsel for a hospital to review the information in a peer review file.

**Whether the Crime-Fraud Exception to the Attorney-Client Privilege Applies so as to Warrant an *in Camera* Inspection of the Sealed Documents**

Plaintiffs ask the Court to conduct an *in camera* inspection of the sealed documents in Dr. Grain's peer review file because they claim the documents will reveal a crime and/or fraud by Mr. Seryak and other Miller Canfield attorneys. Plaintiffs argue that the documents are excepted from the attorney-client privilege under the "crime/fraud exception."

"A communication is excepted from the attorney-client privilege if it is undertaken for the purpose of committing or continuing a crime or fraud." *United States v. Collis*, 128 F.3d 313, 321 (6th Cir. 1997). The Sixth Circuit has devised a two-part test for determining whether to apply the exception:

> "First the [movant] must make a prima facie showing that a sufficiently serious crime or fraud occurred to defeat the privilege; second, the [movant] must establish some relationship between the communication at issue and the prima facie violation" *In re Antitrust Grand Jury*, 805 F.2d 155, 164 (6th Cir. 1986). To satisfy its prima facie showing, the evidence presented by the [movant] must be such that "a prudent person would have a reasonable basis to suspect the perpetration of a crime or fraud." *Id*. at 166.

*Collis*, 128 F.3d at 321. Magistrate Judge Pepe found no evidence to support Plaintiffs' assertion that Mr. Seryak or any other Miller Canfield attorney had removed documents from or reviewed Dr. Grain's peer review file. Therefore, by extension, he found no evidence to support a prima facie case to defeat the privilege. (Doc. 165 at 31-32.)

Plaintiffs argue that the magistrate judge erred in finding no evidence of fraud. Plaintiffs contend that they "have satisfied their prima facie case by presenting evidence,

13

through Dr. Grain's affidavits, that a prudent person would have a reasonable basis to suspect the perpetration of a crime or fraud." (Pls.' Obj. at 11-12.)

In his affidavit, Dr. Grain states that he observed the following when he viewed his peer review file on October 12, 2006:

> . . . there was a multi-page document, the body of which I recall contained a log of those who gained entrance to my Peer Review file. While I do not rcall the exact dates of the invasions, I recall seeing Mr. Seryak's name being mentioned more than one time. I do recall there was language within the document which indicated that I had either given permission or forfeited my statutory right to preclude disclosure of my Peer Review files. I recall that, after examining the multi-page document, my Peer Review files had been released during the years 2003 and 2004. I concluded that he invaded my files and received copies more than one time. I also recall that other persons were also named as having had access and copies of my Peer Review files. . . . In conjunction with seeing Mr. Seryak's name I recall concluding that the other individuals were also attorneys. . . .

(*Id*., Ex. 4 at ¶ 6.) Dr. Grain also provides that this document was removed from his file sometime between October 12 and 17, 2006, along with the other documents that have since been sealed. (*Id.* at ¶ 3.) For the following reasons, however, this Court agrees with Magistrate Judge Pepe that Dr. Grain's affidavit fails to provide a "reasonable basis to suspect the perpetration of a crime or fraud."

Neither Dr. Grain nor his counsel submitted the aforementioned evidence when the issue of defense counsel's alleged misconduct was litigated before the arbitration panel. Dr. Grain submitted two affidavits in the arbitration proceedings in support of

14

Plaintiffs' motion for sanctions: one dated 10/26/06 and another dated 11/10/06. In the first affidavit, Dr. Grain provides that when he reviewed his peer review file on October 12, 2006, "[o]n the very top I noticed first a three page attorney-client communications log, and then the next page was a series of e-mail communications starting on November 14, 2005 between Page Underwood and Colleen Sampeer[3]." (Doc. 156, Ex. 2 at ¶ 4.) Dr. Grain states that this e-mail indicated to him that Ms. Sampeer had copied his peer review file and forwarded it to Ms. Underwood. (*Id*. at ¶ 5.) Dr. Grain never states, however, that he saw evidence suggesting that Dr. Seryak or any other Miller Canfield attorney had accessed or requested a copy of his file. In fact, and contrary to his most recent affidavit, he states: "I have not had an opportunity to review the remaining portions of my Peer Review file to determine if there have been any other unauthorized disclosures . . ." (*Id*. at ¶ 11.)

In his affidavit dated November 10, 2006, Dr. Grain states that when he reviewed his file on October 12, 2006, he "discovered that Ms. Underwood *and Mr. Seryak* had *received . . . copies of* my Peer Review file" and that the next day the documents reflecting their involvement had been removed. (Doc. 156, Ex. 3 ¶ 9 (emphasis added).) Dr. Grain does not mention evidence that Mr. Seryak or any other attorney (including Ms. Underwood) "gained entrance to" his file, let alone that they did so "more than one time." (*Compare* 12/8/08 Aff. at ¶ 6). Dr. Grain further states in this earlier affidavit: "I

---

[3]Ms. Sampeer is Mercy Hospital's Medical Staff Coordinator and the person in charge of its peer review files on physicians.

am not in a position to know whether there was other unauthorized access to and copying of my Peer Review file since I have substantively reviewed only the access log and memorandum from Ms. Underwood." (Doc. 156, Ex. 3 at ¶ 11.)

There was no evidence presented in the arbitration proceedings suggesting that Mr. Seryak or any Miller Canfield attorney copied documents in Dr. Grain's peer review file, requested that copies be made of documents from the file, or reviewed the file. Mr. Seryak, however, represented on a number of occasions that he never saw Dr. Grain's peer review file. (*See, e.g.,* Doc. 142, Ex. A at 1108-09, 2898.) Ms. Sampeer testified during the arbitration proceedings that the file had not been provided to any attorneys at Miller Canfield. (Doc. 142, Ex. A at 5163, 5172, 5175, 5178, 5187, 5200.) Ms. Underwood testified that she did not share the copy of Dr. Grain's file that she received with anyone. (*Id*. at 5354-55.) Finally, the arbitrators reviewed the documents under seal– including the document that Dr. Grain now alleges mentioned Mr. Seryak's name more than one time as someone who had access to his peer review file. Nevertheless, they declined to recommend sanctions against Mr. Seryak and/or Miller Canfield or to disqualify them from the proceedings.

## Sanctions

Defendants seek sanctions against Plaintiffs' counsel pursuant to 28 U.S.C. § 1927 based on counsel's filing of Plaintiffs' motion to disqualify Mr. Seryak and Miller Canfield and their objections to Magistrate Judge Pepe's decision. Defendants argue that

Plaintiffs' counsel filed the pleadings "as a tactical maneuver to gain unwarranted advantage, to cause Defendants additional attorney fees, and to 'get even' with Defense counsel who have successfully represented their clients." (Defs.' Resp. at 20.)

28 U.S.C. § 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees incurred because of such conduct.

"The purpose of this statute is 'to deter dilatory litigation practices and to punish aggressive tactics that far exceed zealous advocacy.'" *Garner v. Cuyahoga County Juvenile Court*, 554 F.3d 624, 644 (6th Cir. 2009) (quoting *Red Carpet Studios v. Slater*, 465 F.3d 642, 646 (6th Cir. 2006)). The Sixth Circuit has advised that sanctions are appropriate "only where the attorney 'intentionally abuses the judicial process or knowingly disregards the risk that his actions will needlessly multiply proceedings.'" *Id*. at 645 (quoting *Red Carpet Studios*, 456 F.3d at 646.)

In the present case, the Court believes that Plaintiffs' counsel has, at the very least, "knowingly disregard[ed] the risk that his actions will needlessly multiply proceedings." The confidentiality of Dr. Grain's peer review file in general and the issue of whether Defendants' attorneys engaged in misconduct with respect to the file were litigated extensively in the arbitration proceedings. The arbitration panel's decision with respect to Plaintiffs' motion for sanctions and ruling that all documents from the peer review file

could be submitted as evidence during the arbitration proceedings should have ended the issue.

Instead, Plaintiffs have raised the issue again in this forum. At the very least, Plaintiffs should have raised the issue in their pleadings addressing whether this Court should confirm and/or vacate the arbitrator's award. Almost eight months after this Court confirmed the arbitration panel's award, Plaintiffs raised the issue– grinding to a halt any further litigation of the actual claims in this six-year old case that remain to be adjudicated. In light of the fact that the arbitration panel already opened Dr. Grain's peer review file for review by Plaintiffs' and Defendants' counsel and Plaintiffs apparently introduced the entire file as an exhibit in the arbitration proceedings, this Court finds no legitimate reason for delaying the proceedings and wasting defense counsel's and the district court's resources raising the issue of whether Mr. Seryak or another attorney at Miller Canfield previously accessed and copied that file.

For these reasons, the Court grants Defendants' request for sanctions pursuant to 28 U.S.C. § 1927. Defendants' counsel shall submit an itemization of their reasonable attorneys' fees and costs incurred defending against Plaintiffs' motion for sanctions and objections within ten (10) days of this Opinion and Order.

## Conclusion

For the reasons set forth above, the Court concludes that Magistrate Judge Pepe did not clearly err in his April 15, 2009 decision denying Plaintiffs' motion to disqualify

Mr. Seryak and Miller Canfield and granting in part and denying in part Defendants' motion to strike Dr. Grain's December 8, 2008 affidavit. The further concludes that Plaintiffs' counsel should be required to pay the costs and fees that Defendants have been forced to incur defending against Plaintiffs' motion to disqualify.

Accordingly,

**IT IS ORDERED**, that Magistrate Judge Pepe's April 15, 2009 orders are **AFFIRMED** and Plaintiffs' objections to those orders are **DENIED**;

**IT IS FURTHER ORDERED**, that Defendants' request for sanctions pursuant to 28 U.S.C. § 1927 is **GRANTED**.

                                              s/PATRICK J. DUGGAN
                                              UNITED STATES DISTRICT JUDGE

Copies to:
Magistrate Judge Stephen Pepe
Elmer L. Roller, Esq.
Gary P. Supanich, Esq.
W. Mack Faison, Esq.
Richard J. Seryak, Esq.